JAMES R. STOUT, ESQ.
Nevada Bar No. 008680
STOUT LAW FIRM
4560 South Decatur Boulevard, Suite 201
Las Vegas, Nevada 89103
Telephone: (702) 794-4411
Facsimile: (702) 794-4421
E-Mail: jstout@jstoutlaw.com
Attorneys for Plaintiff, CRAWFORD SHAW

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| CRAWFORD SHAW, an individual, | |
| Plaintiff, | Case No.: 2:10-cv-1581 |
| v. | Dept. No.: |
| CHINA ARMCO METALS, INC., a domestic corporation; Action Stock Transfer, a foreign corporation; KEXUAN YAO, an individual; WEN FENGAO, an individual; WEINGANG ZHAO, an individual; TAO PANG, an individual; HEPING MA, an individual; WILLIAM THOMSON, an individual and DOES 1 through 100 inclusive, | **COMPLAINT** |
| Defendants. | |

COMES NOW Plaintiff CRAWFORD SHAW [hereinafter referred to as "Plaintiff"], by and through his attorneys, James R. Stout, Esq. and STOUT LAW FIRM, and for their Complaint, plead and allege as follows:

## THE PARTIES

1. Plaintiff is a shareholder in China Armco Metals, Inc. ("CNAM") and an individual who resides in Houston, Texas with a business address of 770 South Post Oak Lane, Suite 330, Houston TX 77056.

2. Defendant, CNAM was, and is at all times relevant, a Nevada corporation with its stock traded in the U.S. public securities market on the NYSE Amex. CNAM is in the business of importing, selling and distributing a variety of metal ore to the metal refinery industry and also in the business of recycling metal in China.

3. Defendant Action Stock Transfer Corporation was and is at all times relevant CNAM's stock transfer agent., a Utah corporation, with an address of 7069 Highland Dr. Suite 300, Salt Lake City, UT 84121.

4. Defendant, Kexuan Yao ('Yao") is a citizen of China and holds a business visa to work temporarily in the United States. At all times relevant to this matter, Yao was, and is, the Chief Executive Officer and Chairman of the Board of Directors of China Armco Metals, Inc. CNAM.

5. Defendant, Fengtao Wen ("Wen") at all times relevant to this matter, Wen was, and is, the Chief Financial Officer of CNAM.

6. Defendant, Weingang Zhao ("Zhao") at all times relevant to this matter, Zhao was, and is, a Director of CNAM.

7. Defendant, Tao Pang ("Pang") at all times relevant to this matter, Pang was, and is, a Director of CNAM.

8. Defendant, Heping Ma ("Ma") at all times relevant to this matter, Ma was, and is, a Director of CNAM.

9. Defendant, William Thomson ("Thomson") at all times relevant to this matter, Thomson was, and is, a Director of CNAM.

10. The address of the principal place of business of the Corporation is One Waters Park Drive, Suite 98, San Mateo, CA 94403.

**JURISDICTION AND VENUE**

11. Venue is proper in this Court because the defendant corporation was and is at all times relevant a Nevada corporation. Defendants transacted business in this district; a substantial part of the events, misrepresentations, inconsistent statements, and omissions giving rise to Shaw's claims occurred in this district; and one or more of the offers and sales of securities took

place in this district. This Court has jurisdiction over all causes of action arises under the following:

    (a)    Federal question jurisdiction, 28 U.S.C § 1331;

    (b)    Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa ("Exchange Act");

    (c)    Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated under section 10(b) of the Exchange Act, 17 CFR § 240.10b-5; and

    (d)    Nevada Revised Statutes NRS 78.347.

## SUMMARY

12. In the last Form 4 Report filed by Defendant Kexuan Yao on July 2, 2010, he represents that he beneficially owns 6,900,000 shares of common stock of CNAM. This representation places Yao holdings of CNAM at more than 48% of all the issued and outstanding common stock of CNAM. CNAM's stock trades on the NYSE-Amex exchange. In June 2010, Yao entered into an undisclosed structured transaction agreement to sell/transfer 1.3 million shares of his CNAM stock, for approximately $1.92 per share, while simultaneously communicating to the market that he was buying 400,000 shares of CNAM for $5.00 a share via the exercise of an option. The reason Yao has refused to disclose the structured transaction agreement as required under federal securities laws is twofold; first was to protect the CNAM stock price from falling. Second was to hide from CNAM shareholders and investors that he committed securities fraud and could be prosecuted by the Securities and Exchange Commission ("SEC") for a violations of Section 5 of the Securities Act of 1933, as amended. Yao, Wen, Zhao, Pang, Tao, Thomson and the Company's legal counsel all had personal knowledge that this Section 5 violation alone could subject Yao to civil and potentially criminal SEC

prosecution. Yao's own attorney has averred that "...the SEC could prosecute Yao for his participation in the violation of Section 5 of the Securities Act, a non-scienter based violation. Yao would suffer irreparable reputation damage, including a permanent officer and director bar that world end his chosen career..." (*See* Case No: SACV10-01299 AG, United States District Court Central District of California, Memorandum of Points and Authorities in Support of Plaintiff's Ex Parte Application for Temporary Restraining Order, Page 11 Line 6 through 10). Further this conduct is with knowledge and intent. On August 24, 2010 Stanley Morris attorney for Yao stated in a memorandum for a Temporary Restraining Order ("TRO") that one of the main purposes for a TRO concerning Yao's 1.3.million share transfer, was that if Yao did not receive a TRO that Yao would have to disclose this transaction to the public which would "hurt the stock"

> "...Further, Yao would be obligated to file public reporting forms with the SEC announcing he had sold stock in China Armco, which would hurt the value of his and other stockholders' interest..." (*See* Case No: SACV10-01299 AG, United States District Court Central District of California, Memorandum of Points and Authorities in Support of Plaintiff's Ex Parte Application for Temporary Restraining Order, Page 11 Line 6 through 10). On or about August 26, 2010 in the Case Judge Andrew J. Guilford DENIED Yao's Motion for a TRO thus requiring Yao to disclose that he transferred 1.3 million shares of CNAM stock for approximately $1.92 per share.

> "Plaintiff Kexuan Yao ("Plaintiff") filed an application for temporary restraining order ("Application") In the Application, Plaintiff asks that Defendant Anthony Gentile ("Defendant Gentile") and Defendant Crisnic Fund SA ("Defendant Crisnic") (collectively, "Defendants") be enjoined from, among other things, selling shares of stock that Plaintiff transferred to Defendants as collateral for a loan. After considering

the papers submitted, the Application is DENIED..."

To this day, with knowledge of their obligation to file a Form 4 disclosing this 1.3 million shares transaction for $1.92 and the detrimental effect it will have neither, Yao, Wen, Zhao, Pang, Thomson, Yao's legal counsel or CNAM has ever disclosed this transaction in any SEC Report This pattern of material concealment and the documented damages this has and continues to cause, which is documented in detail in this complaint, exists due to a conspiracy among the officers, directors, and legal counsel ("Parties") of CNAM, all of whom are acting in concert to systematically omit and conceal from investors critical and detrimental information which is required to be disclosed under federal securities laws.

## FACTUAL ALLEGATIONS

13. On or about June 11, 2010, Yao entered into Structured Transaction Agreement ("Agreement") with the Crisnic Fund, a Costa Rican entity "(Fund"), who offered to sell and hedge Yao's 1.3 million shares ('Shares") of CNAM for approximately $2.5 million or approximately $1.92 per share. A signed copy of the Structured Transaction Agreement as **Exhibit 1** attached separately.

14. In the Agreement that Yao signed stated in Section 2(e). the following:

"In the event Borrower is a director, officer or principal shareholder (as such terms are used in Section 16 of the Securities Exchange Act of 1934) of any of the companies that issued shares of capital stock submitted as Pledged Collateral, the Borrower will abide by all regulations governing hedging transactions conducted by directors, officers, or principal shareholders, including disclosure requirements and limits on transaction..."

15. In contradiction to the Agreement in Section 2(e) Yao as an Officer, Director and the largest shareholder of CNAM, has never filed the appropriate disclosure with the SEC as

5

required in Section 2(e) of the Agreement and federal securities law requiring disclosure of his transfer of 1.3 million shares of CNAM.

16. The Structured Agreement also stated in Section 8

"PLEDGED COLLATERAL DIVIDENDS/VOTING"

"…whether the Fund, pursuant to this Agreement, has pledged, transferred, assigned, hypothecated, lent, encumbered, sold short, or sold outright such Pledged Collateral as part of its hedging efforts.."

17. Yao signed this Agreement having knowledge that the Fund was going to sell or at the minimum had the right to sell his 1.3 million shares of his CNAM stock, and as such Yao realized that he needed to remove the restrictive stock legend and electronically transfer to the Fund the 1.3 million shares.

18. On or about June 20, 2010 Yao retained the law firm of JS Barkats ("Barkats") to draft a legal opinion that Yao's 1.3 million restricted, unsellable, CNAM shares could be transformed into unrestricted, sellable, shares under SEC exemption Rule 144. A copy of the Barkats Engagement Agreement as **Exhibit 2** attached separately.

19. Prior to Barkats providing a legal opinion for the benefit of Yao, Barkats would require a seller's representation letter from Yao ("Representation Letter"), explaining how the shares were acquired and the nature of Yao's holdings in CNAM. This Letter would serve as support to any legal opinion seeking exemption from registration of restricted securities to be sold.

20. In the Representation Letter that Yao provided to Barkats, Yao made the following representation as to what percentage the 1.3 million shares represented in CNAM: A signed copy of Yao's Representation Letter to Barkats as **Exhibit 3** attached separately.

"At the time of the pledge, the pledge and any other transfer during the 3 months

preceding the pledge does not exceed the greater of (i) 1% of the shares of the Company's common stock outstanding, as shown by the most recent report or statement published by the Company..."'

21. China Armco's most recent periodic filing with the Securities and Exchange Commission showed that as of June 30, 2010, CNAM had total 15,180,286 shares of common stock issued and outstanding. Which would make Yao's 1.3 million shares he was selling approximately 8.56% of the total issued and outstanding capital of CNAM ors approximately 8.5 times more shares than what Yao represented to Barkats in the Representation Letter. A copy of CNAM's Quarterly Report on Form 10-Q filed with the SEC on August 16, 2010 for Period Ending June 30, 2010 as **Exhibit 4** attached separately.

22. In no doubt relying upon this false statement by Yao to Barkats in the Representation Letter, Barkats issued to Yao a legal opinion that the restrictive legend on Yao's 1.3 million shares could be removed. A copy of Barkets Legal Opinion to Yao is attached hereto as **Exhibit 5**.

23. On or about June 28, 2010, Yao submitted an Irrevocable Instruction ('Irrevocable Instructions") to CNAM's common stock transfer agent, Action Stock Transfer Corporation ("Transfer Agent") to transfer an aggregate of 1.3 million common shares of China Armco Metals, Inc. (The "Company") evidenced by certificates numbered 1330 & 1391 (the "Subject Securities") to ("Crisnic") by Deposit/Withdraw at Custodian (DWAC). This is an electronic immediate deposit of freely tradeable shares into the Fund's brokerage account. A copy of Yao's Irrevocable Instructions to Action Stock Transfer is attached hereto as **Exhibit 6**.

24. These Irrevocable Instructions referenced the following documents ("Transfer Documents") to effectuate the transfer of Yao's 1.3 million share of CNAM to the benefit of the Fund:

> "1. Those certain share certificates numbered 1330 and 1391 evidencing an aggregate of 1,300,000 common shares of the Company (collectively, the "Certificates");
>
> 2. Those certain Stock Powers executed in blank by the undersigned [Yao] of even date with respect to transfer of 1,300,000 shares of the Company to Crisnic;
>
> 3. That certain Legal Opinion of the Law office of JS Barketts, ESQ relating to the Subject Securities of even date; and
>
> 4. That certain Agreement and Indemnity Letter from the Company to the transfer agent of even date.
>
> Pursuant to the Documents and to this Letter you are hereby instructed by the undersigned to remove the restrictive legend from the Certificates and following the removal of the legends, thereon: (i) convert 1,300,000 of the Subject Securities into electronic form such that you may subsequently send them via DWAC to:
>
> DTC Clearing Number 0234
>
> Penson Financial Services Inc.
>
> 1700 Pacific Ave. Ste 1400
>
> Dallas Texas, 75201
>
> For Further Credit to:
>
> Crisnic Fund S.A. ..."

25. These Irrevocable Instructions were signed by both Kexuan Yao and Fengtao Wen in his official capacity as Chief Financial Officer and marked with the China Armcometal, Inc. Corporate stamp.

8


26. On or about June 28, 2010 the Transfer Agent upon receipt of the Transfer Documents, and Irrevocable Instructions presented by Yao and Wen in the corporate capacity as officers of CNAM, removed the restrictive legend from the Certificates, and following the removal of the legends thereon converted the 1.3 million shares owned by Yao into electronic form and transferred said shares via electronic delivery ("DWAC") to the Fund.

27. On or about June 30, 2010, James M. Schneider of Schneider & Weinberger, the purported corporate counsel for CNAM sent to Transcend Capital, the account custodian for the Fund a letter ("CNAM Letter") which stated:

"..We are counsel for China Armco Metals, Inc.

We understand that you are holding in street name up to 1,300,000 shares of common stock (the "Shares") of China Armco which have been deposited with your firm for potential sale on behalf of Crisnic Fund, S.A or certain designees and assignees of that fund (the "Fund"). These shares are beneficially owned by Mr. Kexuan Yao, the Chief Executive Officer of China Armco and, obviously, an affiliate thereof. These Shares were purportedly assigned to the Fund as collateral for a so-called structured transaction agreement between the Fund and Mr. Yao which China Armco contends was not a bona fide loan transaction and appears to be a device or machination to circumvent the provisions of Section 5 of the Securities Act of 1933 and the prescribed requirements of Rule 144 thereunder. In particular, the exemption provided by Subsection (iv) of Section 144(d)(3) has not been complied with, and, accordingly, any sale of these Shares would not derive the benefit under that exemption..."

"Until such time as China Armco's investigation of all the facts and circumstances concerning this transaction are completed, on behalf of China Armco we would demand that no disposition of any of the Shares or distribution of proceeds therefore be

undertaken with out the authorization of China Armco, as the Fund has no right to take any action on behalf of Mr. Yao with respect to the Shares. The law firm JSBarkats PLLC is not authorized to render any opinions or instructions relating to these shares…" A copy of CNAM Legal Counsel Letter to Transcend as **Exhibit 7** attached separately.

28. On or about June 29, 2010 Yao saw CNAM's stock price fall on heavy volume and was concerned that his share price was falling. (Declaration of Kexuan Yao in Support of Application for Writ of Attachment and Temporary Restraining Order Case No: SACV 10-1299 AG (JCGx) (page 5 line 16-17) A copy of The Declaration of Kexuan Yao as **Exhibit 8** attached separately.

"… On June 29, 2010, I became aware that an unusual volume of China Armco shares had traded on that day and the stock price had dropped precipitously. …

29. On July 2, 2010 Yao filed a Form 4 with the SEC stating that on June 30, 2010, Yao acquired 400,000 additional shares of CNAM by exercising an option at $5.00 per share. In this same report Yao omitted from disclosure that he transferred/sold 1,300,000 shares of CNAM stock on June 28, 2010 for approximately $2,500,000 or $1.92 per share. A copy of the Form 4 Filed on July 2, 2010 by Yao as **Exhibit 9** attached separately.

30. On or about July 21, 2010 Stanley Morris ('Yao Counsel') forwarded a letter to the Fund and Anthony Gentile with carbon copy to Barkats, Transcend, and others wherein he stated.

"…Mr. Yao's 1.3 million China Armco shares delivered as collateral were not registered, and are not exempt from registration. Accordingly, to the extent that you have sold any of such shares, your actions would violate the registration requirements of such laws. Also, it appears that your actions, to date, violate the anti-fraud provisions of the federal and state securities laws. See Sections 5(a) and (c) of the Securities Act of 1933 [15 U.S.C. § 77e(a) & (c)]; Section 10(b) of the

Exchange Act of 1934 [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5].

As I am sure you are aware, Mr. Yao's 1.3 million shares of China Armco stock are restricted from trading as "control securities". Control securities are those held by an affiliate of the issuing company. An affiliate is a person, such as Mr. Yao, in a relationship of control with the issuer. See, SEC Rule 144(a). There can be no genuine dispute that Mr. Yao, CEO of China Armco, is a control person. Accordingly, when Crisnic obtained the 1.3 million China Armco shares from Mr.Yao, it took restricted securities, even if they were not restricted in Mr. Yao's hands. The Ninth Circuit has concluded that Mr. Yao, as an affiliate of the issuer, may not rely on the Section 4(1) [15 U.S.C. 15 U.S.C. § 77d] exemption without the benefit of Rule 144 [17 C.F.R. § 230.144 safe harbor]. *SEC v. M & A West,* 538 F.3d 1043, 1053 (9th Cir. 2008).

Under Rule 144, Mr. Yao may transfer exempt from registration a maximum of 1% (143,555 shares) of the issued and outstanding every 90 days, provided the other conditions are satisfied. However, there is no tacking of Mr. Yao's holding period. A party, such as Crisnic, receiving stock from Mr. Yao, must wait a minimum of six-months before a resale of the 1% would be permitted. This means that Crisnic would, at the earliest, assuming all other Rule 144 conditions are met, be entitled to removed the restrictive legend from 143,555 shares of stock six-months after it received the stock from Mr. Yao under Rule 144(d)(l)(i)…"

"…Finally, Mr. Barkats mistakenly cites Rule 144(k) as a basis for opining that the transaction is exempt from registration. Rule 144(k) was eliminated in February 2008, and, in any event, it was previously only applicable to *non-*

11

*affiliates,* not affiliates such as Mr. Yao..." A copy of July 21, 2010 Letter Form Stanley Morris as **Exhibit 10** attached separately.

31. On or about July 26, 2010 Yao's Counsel wrote a letter to the Fund were he Stated:

> "... Mr. Yao also received $1 million from you today, He will hold that one million dollars..."

32. On or about July 23, 2010 CNAM filed a report on Form 8-K with the SEC stating the results of their shareholder meeting and the results of their proxy vote held on July 19, 2010. Further This report identified the ratification the selection of Li & Company as the company's auditor and the election of Kexuan Yao, Weigang Zhao, Tao Pang, Heping Ma and William Thomson as directors. The total number of shares which voted was a total 6,754,754 shares representing 44.49%t of the total outstanding shares of 15,189,286 as reported for period ending June 30, 2010. A copy of the Form 8-K Filed by CNAM on July 23, 2010 as **Exhibit 11** attached separately.

33. The 6,754,754 shares that voted on July 19, 2010 where less than the 6,900,000 shares that Yao declared in his last Report Form 4 he filed with the SEC on July 2, 2010.

34. Under Nevada law CNAM did not have the requisite votes for a quorum and therefore the ratifications and elections of directors for the shareholder meeting are null and void.

35. On or about August 16, 2010 CNAM filed with the SEC, a materially false quarterly report on Form 10-Q for the period ending June 30, 2010. The 10-Q indentified the following disclosure of Yao's disposition and acquisition of CNAM Shares. A copy of the Report on Form 10-Q Filed by CNAM on August 16, 2010 for period ending June 30, as **Exhibit 12** attached separately.

"... "On April 14, 2010, Mr. Kexuan Yao purchased stock options to purchase 2,000,000 shares of the Company's common stock at $5.00 per share, which were originally granted to and owned by Ms. Feng GAO on June 27, 2008 pursuant to a share purchase agreement to consummate the reverse merger capital transaction with Armco & Metawise (H.K) Limited. In addition, on April 14, 2010 and June 25, 2010, Mr. Yao exercised part of the options and purchased 1,000,000 and 400,000 shares of the Company's common stock at $5.00 per share resulting in net proceeds of $5,000,000 and $2,000,000 to the Company, respectively. The balance of the stock options to purchase the remaining 600,000 common shares expired at June 30, 2010."

"On April 14, 2010 and June 25, 2010, Mr. Yao exercised options to purchase 1,000,000 and 400,000 shares of our common stock at $5.00 per share resulting in net proceeds of $5,000,000 and $2,000,000 to us."

36. This Quarterly Report on Form 10-Q failed to disclose Kexuan Yao's transfer of 1.3 Million shares; that CNAM was conducting an investigation into allegations that their Chief Executive Officer and Board of Director member (Yao) was involved in an illegal stock transfer; and that Yao and Wen made false representations to the Transfer Agent in representing the Irrevocable Instruction as being official CNAM transaction when in reality it was for the undisclosed benefit of Yao.

37. This Quarterly Report on Form 10-Q was signed by and separately certified pursuant to requirements under Sarbanes Oxley by defendants Yao and Wen.

38. On August 24, 2010, Kexuan Yao attorney Stanley Morris filed a Memorandum of Points and Authorities in Support of Plaintiff's Ex Parte Motion for a Temporary Restraining Order ("TRO"). In that Memorandum he identifies that Kexuan Yao could be subject to SEC Pro7ecution and could suffer a career ending officer and director bar from the SEC.

"...Yao may not only lose his stock, valued at almost $5,000,000, but is exposed to prosecution by the SEC for securities law violations..."

"...the SEC could prosecute Yao for his participation in the violation of Section 5 of the

Securities Act, a non-scienter based violation. Yao would suffer irreparable reputation damage, including a permanent officer and director bar that would end his chosen career...." A copy of the Memorandum and Points and Authorities as **Exhibit 13** attached separately.

39. To this day CNAM has never reported Yao's identified SEC prosecution exposure in any Report to the SEC as mandated by federal law. A copy of an Independent Investigation on Kexuan Yao's Omission as **Exhibit 14** attached separately.

40. On August 24, 2010, Kexuan Yao attorney Stanley Morris filed a Memorandum of Points and Authorities in Support of Plaintiff's Ex Parte Motion for a Temporary Restraining Order. In the Memorandum he states that if Kexuan Yao does not receive a Temporary Restraining Order, he would be obligated to file public reporting forms with the SEC announcing he had sold stock in China Armco, which would hurt the value of his and other stockholders' interest.

"...Further, Yao would be obligated to file public reporting forms with the SEC announcing he had sold stock in China Armco, which would hurt the value of his and other stockholders' interest..."

41. On or about August 26, 2010 in the Case Judge Andrew J. Guilford denied Yao Motion for a Temporary Restraining Order thus requiring Yao to disclose that he transferred 1.3 million shares of CNAM stock for approximately $1.92 per share.

"...Plaintiff Kexuan Yao ("Plaintiff") filed an application for temporary restraining order ("Application") In the Application, Plaintiff asks that Defendant Anthony Gentile ("Defendant Gentile") and Defendant Crisnic Fund SA ("Defendant Crisnic") (collectively, "Defendants") be enjoined from, among other things, selling shares of stock that Plaintiff transferred to Defendants as collateral for a loan. After considering

14

the papers submitted, the Application is DENIED..."  A copy of Judge Andrew Guilford Ruling to Deny Kexuan Yao, TRO as **Exhibit 15** attached separately.

42. Yao has knowledge of his obligations to file a Form 4 disclosing the transfer of 1.3 million shares on or about June 28, 2010 for approximately $1.92 per share, and is aware that this report when filed will hurt the price of the shares he owns in CNAM.

43. Yao has never filed to this day a Form 4 with the SEC stating that on or about June 28, 2010 Yao transferred 1.3 million shares for approximately $1.92 per share. A copy of an Independent Investigation on Kexuan Yao's Failure to file a Form 4 Disclosing his transfer of 1.3 million shares as **Exhibit 16** attached separately.

## FIRST CAUSE OF ACTION

### COMMON LAW FRAUD
(Shaw against Yao and Wen)

44. Shaw incorporates paragraphs 1 through 43 as if fully set forth herein.

45. Yao fraudulently misrepresented to Barkets that the 1.3 million shares represented 1% of his holdings when in fact the shares represented more than 8.5%. This misrepresentation negatively affected the financial integrity of the company and its shareholders.

46. Yao fraudulently misrepresented to Action Stock Transfer Agent that the shares evidenced by certificate 1330 and 1391 were eligible to be transferred per Yao's instructions. This misrepresentation negatively affected the financial integrity of the company and its shareholders.

47. Yao fraudulently removed the restrictive legend on 1.3 million shares of restricted stock using means of artifice and deceit. Yao's fraudulent removal of the restrictive legend negatively affected the financial integrity of the company and its shareholders.

48. Yao failed to properly disclose his transfer of stock in the Company's Quarterly Report on Form 10-Q with the SEC as required by the Commission. This failure was done with artifice and deceit and negatively affected the financial integrity of the company and its shareholders

49. The Company, Yao, Wen, Zhao, Company Counsel and others failed to adhere to the requirements of filing Form 4 promulgated by the SEC to ensure the integrity of the public market. Said failure was done fraudulently and did indeed defraud the Company and its shareholders negatively affecting the financial integrity of the company and its shareholders.

## SECOND CAUSE OF ACTION

### CIVIL CONSPIRACY
(Shaw against Yao, Zhao, Pang, Ma, Thomson and Corporate Counsel)

50. Shaw incorporates paragraphs 1 through 49 as if fully set forth herein.

51. On June 30, 2010 CNAM Corporate Counsel sent a letter to Transcend identifying that they were going to conduct an investigation into all the facts and circumstances concerning the transfer of Yao's 1.3 million shares to Fund. In this declared corporate investigation by Corporate Counsel, the Board of Directors consisting of Yao, Zhao, Pang, Ma, Thomson would have knowledge of Yao's illegal activity via the Investigation and conspired with the help of CNAM corporate counsel to conceal this identified illegal activity as a device to defraud the Company and the shareholders as to the true nature of Yao's stock transaction and adverse behavior, including:

1. That Yao transferred of 1.3 million shares of CNAM stock on or about June 28, 2010, and as such was required to File a Form 4 with the SEC disclosing such;

2. That Yao filed on July 2, 2010 a Form 4 with the SEC stating that he acquired 400,000 shares of CNAM stock for $5.00 a share

3. That Yao knowingly omitted from the Form 4 he filed with the SEC on July 2, 2010 that he transferred 1.3 million shares of CNAM stock for approximately $1.92 a share;

4. That Yao obtained a Legal Opinion to remove the restrictive legend on 1.3 million shares under false pretenses.

5. That Yao defrauded the Fund by delivering defective collateral obtained by mean of false representations; .

52. That during the pendency of the Investigation the Board of Directors and Corporate Counsel were aware that Yao made a false representation to the Fund by delivering knowingly defective collateral.

53. That during the pendency of the Investigation the Board of Directors and Corporate Counsel were aware that Yao made a false representation to the transfer agent in the transfer of 1.3 million shares.

54. That during the pendency of the Investigation the Board of Directors and Corporate Counsel were aware that Yao had violated federal securities laws

55. That during the pendency of the Investigation the Board of Directors and Corporate Counsel were aware that CNAM had a duty to disclose in a Report on Form 8-K filed with the SEC that Yao sold shares in Violation of Section 5 of the Securities Act of 1933, as amended.

56. That during the pendency of the Investigation the Board of Directors and Corporate Counsel were aware that CNAM had a duty to disclose in a Report on Form 8-K filed with the SEC that Yao Filed a false Form 4 with the SEC

57. That Yao had filed a false Form 4 with the SEC to manipulate the stock price of the shares. This false filing of Form 4 with the SEC failed to provide the Company and its

shareholders a true and correct picture of the Company's financial position. This failure negatively affected the financial integrity of the company and its shareholders

58. That Yao and Wen co-conspired to deceive the Transfer agent in believing the irrevocable letter of instruction was coming from the company as a bona fide irrevocable letter of instruction while knowing that said letter would be false. Such deception negatively affected the financial integrity of the company and its shareholders

### THIRD CAUSE OF ACTION

### CONSPIRACY TO COMMIT SECURITIES FRAUD
(Shaw against Yao, Wen, Zhao, Pao, Tang, Ma, Thomson and Corporate Counsel )

59. Shaw incorporates paragraphs 1 through 58 as if fully set forth herein

60. Yao, Wen, Zhao, Pao, Tang, Ma, Thomson and CNAM's corporate counsel knew that Yao had exposure to SEC Prosecution and was required pursuant to CFR 229.103 to file a report on Form 8-K with the SEC. Yao, Wen, Zhao, Tang, Ma, Thomson, and corporate counsel failed to comply with CFR 229.103 because said filing would have exposed the Company, Yao, Wen and corporate counsel to SEC sanctions that would negatively affect the Company. Failure to file the Form 8-K and to notify the SEC of Yao's action negatively affected the financial integrity of the company and its shareholders

61. The Company, the Board of Directors and corporate counsel had knowledge that Yao had filed a false Form 4 and concealed necessary public information regarding the sale of Yao's securities which had it been truthful would have depressed the share price of the Company. Filing the false Form 4 negatively affected the financial integrity of the company and its shareholders

62. By employing Corporate Counsel to conduct a nonexistent internal investigation, the Company, Yao, Wen, Zhao, Tang, Pao, Ma, Thomson, corporate counsel and others violated the provisions of Section 10(b)(5) of the Exchange Act and Rule 10b-5 promulgated thereunder,

which prohibits the use of any device, scheme or artifice to defraud, or to make any untrue statement of a material fact or to omit to state a material fact in the purchase and sale of securities. This violation negatively affected the financial integrity of the company and its shareholders.

63. By filing a false Form 4, the Company, Yao, Wen, Zhao, Thomson, corporate counsel and others violated the provisions of Section 10(b)(5) of the Exchange Act and Rule 10b-5 promulgated thereunder which prohibits the use of any device, scheme or artifice to defraud, or to make any untrue statement of a material fact or to omit to state a material fact in the purchase and sale of securities. This violation negatively affected the financial integrity of the company and its shareholders.

**PRAYER FOR RELIEF**

WHEREFORE, Shaw prays for judgment against Defendants as follows:

1. Money Damages, including general, special, consequential, incidental, compensatory, resulting, proximate, and nominal damages, in an amount to be proven at trial;

2. Injunctive Relief, including, without limitation, temporary restraining orders, preliminary injunctions and permanent injunctions, including without limitation, Defendants should be: (1) prohibited from any transaction in China Armco stock without prior approval of this Court or the written consent of a Court Appointed Custodian; (2) required to maintain and protect and be prohibited from any transaction involving the proceeds of the sale of China Armco stock without prior approval of this Court or the written consent of a Court Appointed Custodian; (3) prohibited from destroying any books and records of the subject transactions including internal investigation identified on June 30, 2010; and (4) required to report to and account to this Court, all transactions involving Yao's transfers and pledges of China Armco shares, including stock transfer records and the proceeds from any sales/pledges thereof; and

3. A custodian or receiver should be appointed to manage, or to oversee the management of, China Armco, to access the internal systems controls of their mandated financial reporting in accordance with Sarbanes Oxley and to conduct an internal investigation which will provided to the court identifying fraud which has been found and remedies taken so as to continue the operation of China Armco.

DATED: September 16, 2010

STOUT LAW FIRM

_____
JAMES R. STOUT, ESQ.
Nevada Bar No. 008680
4560 South Decatur Boulevard, Suite 201
Las Vegas, Nevada 89103
Attorney for Plaintiff, CRAWFORD SHAW